STATE OF WEST VIRGINIA

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.A.**

**No. 20-0597** (Lewis County 19-JA-43)

**MEMORANDUM DECISION**

Petitioner Mother S.A., by counsel Brian W. Bailey, appeals the Circuit Court of Lewis County's July 31, 2020, order denying her request for an improvement period and terminating her parental rights to J.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Hunter D. Simmons, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her request for an improvement period and terminating her parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, petitioner was involved in three separate family court cases concerning custody of J.A. During the cases, petitioner failed to cooperate with the investigations, missed hearings, and was found to be largely absent from the child's life. In August of 2019, the DHHR filed a child abuse and neglect petition alleging substance abuse by petitioner and the father, domestic violence, and maltreatment of J.A. Before the filing of the petition, the parents and the child's maternal grandmother appeared for a family court hearing regarding custody and visitation with the child. At the hearing, the circuit court ordered them to participate in drug testing; petitioner and the grandmother tested positive for marijuana, and the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

father refused to screen. The DHHR also alleged that petitioner and the grandmother were involved in a domestic altercation, resulting in petitioner's arrest for battery. After petitioner's arrest, her parole for third offense shoplifting was revoked and she was incarcerated for her previously suspended felony sentence. Petitioner remained incarcerated throughout the abuse and neglect proceedings.

The circuit court held an adjudicatory hearing in October of 2019 wherein petitioner stipulated to abusing and neglecting the child. After the matter was continued on multiple occasions for good cause, petitioner moved for a post-adjudicatory improvement period while the DHHR moved for the termination of her parental rights.

In June of 2020, the circuit court held a dispositional hearing wherein a DHHR worker testified that she recommended termination of petitioner's parental rights because petitioner was incarcerated throughout the proceedings and was not eligible for parole for several months. Further, there was no guarantee of her release in the near future. The worker also testified that petitioner did not have a strong bond with J.A., did not visit the child due to her incarceration, could not participate in services, and struggled with substance abuse. Next, petitioner testified and acknowledged that her incarceration throughout the proceedings prevented her participation in services. Petitioner testified that she struggled with substance abuse, lost shared custody of the child in 2018, and had not seen him since May of 2019. The grandmother also testified that she and petitioner had reconciled since their domestic violence incident and that she could provide petitioner a home upon her release from incarceration. Finally, a ministry leader at Celebrate Recovery testified that petitioner attended recovery meetings prior to her incarceration. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the child to terminate petitioner's parental rights. The court's July 31, 2020, dispositional order reflected this termination.[2] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The father's parental rights were also terminated. The permanency plan for the child is adoption by his great-aunt.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying her motion for a post-adjudicatory improvement period because she had a stable house to care for the child and had her own "active plan" in place that was similar to an improvement period. Petitioner also argues that the circuit court erroneously relied on petitioner's incarceration as the main reason for denying her an improvement period. Petitioner contends that although she was incarcerated for nearly a year, the coronavirus pandemic hindered an earlier release that would have allowed her to participate in an improvement period. Further, petitioner avers she was released only a few weeks after the dispositional hearing and could have completed an improvement period. In light of this, she argues that the circuit court should have granted her a post-adjudicatory improvement period. We disagree.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Notably, petitioner does not dispute that she was incarcerated for the majority of the proceedings and, as a result, largely failed to participate in services throughout the case. Instead, petitioner argues that she indicated her intention to fully participate in an improvement period and "there was every reason to believe" that she "would actively be in a position" to complete an improvement period upon release. Petitioner also argues that the circuit court erroneously denied her improvement period almost exclusively because of her incarceration. However, petitioner ignores the myriad of other issues in the case, beyond her incarceration, such as her substance abuse and lack of bonding with the child. While it may be true that petitioner has previously acknowledged struggling with substance abuse, she has at other times flatly denied or minimized such abuse. Petitioner had also not seen the child in over a year or since the beginning of the abuse and neglect proceedings. In denying her motion, the circuit court made several findings on these grounds. Despite this evidence, petitioner asserts that she was wrongly denied an improvement period.

Petitioner argues that she was on the cusp of release from incarceration and would have been able to start an improvement period within weeks of the dispositional hearing. However, at the time of the dispositional hearing, petitioner was still incarcerated with an uncertain release date. While petitioner argues it was "fairly certain" she would have been eligible for expedited parole and released prior to the dispositional hearing but for the coronavirus pandemic, this is entirely speculative in nature. At the time of the dispositional hearing, the circuit court considered that petitioner was still incarcerated, had no imminent release date, and did not have contact with

the child throughout the proceedings. Additionally, petitioner argues that the circuit court erred in granting the father an improvement period while denying petitioner's motion. However, the father maintained sole custody of the child prior to the abuse and neglect proceedings, and the circuit court found that he had a strong bond with the child despite his ultimate failure in his improvement period. For instance, a DHHR caseworker testified that the child would continually inquire as to visits with his father during the proceedings, whereas petitioner was largely absent from the child's life prior to the proceedings. Finally, although petitioner argues that nothing precluded the circuit court from granting her an improvement period in this case, there is no evidence that she would comply with an improvement period. Accordingly, we find no error in the circuit court's denial of her motion.

Next, petitioner alleges that the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(c)(5). However, the evidence introduced during the proceedings below supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, given her untreated substance abuse issues and lack of bonding with the child. While it is true that petitioner may be able to undergo some treatment for her substance abuse in the future, such possible improvement is based on pure speculation. Indeed, petitioner denied a substance abuse problem on several occasions. Further, petitioner often failed to avail herself of the DHHR's services, even at times when she was not incarcerated, such as in prior proceedings. The record shows that the child would have been at risk if returned to petitioner's care, given her untreated substance abuse issues. As such, it is clear that his welfare required termination of petitioner's parental rights.

While petitioner also takes issue with the timeframe from adjudication to termination, arguing that she should have been given additional time and an opportunity to demonstrate that she could correct the conditions of abuse and neglect, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

4

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 31, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison